IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:
ROCK AIRPORT OF PITTSBURGH, LLC,
Debtor.

Case No.:2:14-cv-01105

Bankruptcy No. 09-23155-CMB
Chapter 11

ROCK AIRPORT OF PITTSBURGH, LLC,

**ELECTRONICALLY FILED**

Appellant,

v.

MANAGEMENT SCIENCE ASSOCIATES,
INC., ALASKAN PROPERTY
MANAGEMENT COMPANY, LLC
and NATALIE LUTZ CARDIELLO,

Appellees.

**MEMORANDUM OPINION**

Before the Court is Debtor's (hereinafter, "Rock Airport's") Emergency Motion to Stay Proceedings Pending Appeal Pursuant to Bankruptcy Rule 8005 (doc. no. 1) and Appellee's Response thereto. Doc. no. 2. This Court denied Rock Airport's Emergency Motion on August 22, 2014, by way of a text Order. This Court now writes this Memorandum Opinion to explain the reason it did so.

**I. Background**

As noted in the August 22, 2014 text Order, this Court is familiar with various issues surrounding Rock Airport's Bankruptcy matter as it pertains to Management Science Associates, Inc., (hereinafter "MSA") due to previous appellate proceedings this Court has reviewed. See

docket nos. 2:14-cv-00085 (on appeal to USCA 14-2720); 2:14-00086 (on appeal to USCA 14-2721); and 2:14-cv-00091 (on appeal to USCA at docket no. 14-2722). The Court entered its Orders in the three prior appellate matters on April 11 and 14, 2014.

According to the Parties to the instant Emergency Motion, on June 20, 2014, MSA filed a Plan of Reorganization with the Bankruptcy Court as did Rock Airport. These two Plans are presently being submitted to creditors of the estate. Doc nos. 1-2, ¶ 1.

The Parties also agree that prior to filing its plan on June 20, 2014, MSA acquired the claim of "Priscilla Grdn Living Trust" (hereinafter "Priscilla Trust") and thereby established standing to file its Plan.[1] Doc nos. 1-2, ¶ 2. The Parties further agree that Rock Airport objected to MSA's standing to file the Priscilla Trust claim.[2] Doc nos. 1-2, ¶ 3.

On August 8, 2014, the Bankruptcy Court entered two Memorandum Orders in favor of MSA holding that MSA had standing to file the plan and denying Rock Airport's Objection to the claim. Doc nos. 1-2, ¶ 3. Rock Airport has appealed both of the Bankruptcy Court's Orders in this regard. Doc nos. 1-2, ¶ 4. The Bankruptcy Court's Orders on August 8, 2014 were

---

[1] The Bankruptcy Court noted that Priscilla Trust filed a Proof of Claim against on June 8, 2009. Bankruptcy Docket 09-23155, doc. no. 830, p. 2. This Proof of Claim proffered by the Priscilla Trust was a judgment issued following an arbitration proceeding in the Court of Common Pleas of Allegheny County in the amount of $6,630.95 against Rock Airport for property damage incurred by the Trust. Id. On May 23, 2014, Rock Airport filed a Chapter 11 Plan of Reorganization, which noted that the Priscilla Trust's claim would be, "paid in full over a period of sixty (60) months in equal monthly installments of $110.52 per month commencing on the Effective Date of the Plan or, if this claimant so chooses, the claim will be fully satisfied via a lump sum payment of $2500.00 on the Effective Date of the Plan." Bankruptcy Docket 09-23155, doc. no. 642, pp. 4, 8. On June 9, 2014, MSA filed a Notice of Transfer of Claim whereby it indicated that the Priscilla Trust's claim against Rock Airport had been transferred to MSA. Bankruptcy Docket 09-23155, doc. no. 671.

[2] The Bankruptcy Court's Opinion, notes that Rock Airport claimed to have appealed the arbitration decision to the Allegheny Court of Common Pleas requesting a trial *de novo* but the appeal was automatically stayed due the fact that Rock Airport filed for bankruptcy. Bankruptcy Docket 09-23155, doc. no. 830, pp. 2-3. The Opinion also notes that Rock Ferrone, managing member of Rock Airport, claimed to have tendered payment in full satisfaction of the claim, but alleged that his tender was refused by MSA. Id. On June 20, 2014, Rock Airport filed an Amended Plan of Reorganization reflecting these allegations and indicating that the Priscilla Trusts debt had been satisfied by Ferrone. Bankruptcy Docket 09-23155, doc. no. 714.

2

significant because the Court, upon determining that MSA had standing, could then proceed to consider MSA and Rock Airport's competing Plans for Reorganization. The Bankruptcy Court scheduled confirmation hearings on the competing Plans for August 21, 2014.[3]

MSA filed its Response to the Rock Airport's Emergency Motion with this Court on August 20, 2014. Doc. no. 2. This Court issued its Order denying the Emergency Motion on August 22, 2014. Text Order dated August 22, 2014. This Opinion now follows.

## II. Issue Presented in Rock Airport's Emergency Motion

Rock Airport stated in its Emergency Motion to this Court that the "thrust" of MSA's Reorganization Plan was to sell Rock Airport's "real and personal property" to "an affiliate of MSA, namely Alaskan Property Management Company, LLC" and that the Trustee had "arranged for the sale" of said property to Alaskan Property Management Company, LLC (hereinafter "Alaskan Property"). Doc. no. 1 ¶¶ 5-6. MSA denied these statements in part, invited this Court to review its Plan of Reorganization (filed on the Bankruptcy Docket 09-23155, doc. no. 579), and explained that Trustee entered into an Asset Purchase Agreement with Alaskan Property but filed a Motion seeking an Order Approving the sale to Alaskan Property or the successful bidder at the sale hearing. Doc. no 2, ¶ 5. Although the Parties concur that a hearing on the sale of Rock Airport's assets was scheduled for August 21, 2014, the hearing was continued until September 4, 2014. See footnote 3.

---

[3] The Bankruptcy Court docket reflects that Rock Airport filed an Emergency Motion to Stay Proceedings in the Bankruptcy Court pending Rock Airport's appeal to this Court for relief under B.R. 8005 (*i.e.* the Emergency Motion Rock Airport filed with this Court on August 19, 2014. See, doc. no. 1.). The Bankruptcy Court continued the hearing on Rock Airport's Emergency Motion to Stay Proceedings until September 4, 2014 (Bankruptcy Docket 09-23155, doc. no. 922), and simultaneously, the Bankruptcy Court also continued the hearings on MSA's and Rock Airport's competing Plans for Reorganization, and on the Trustee's (Natalie Lutz Cardiello's) Motion to Sell Property Free and Clear of Liens Under Section 363(f). These hearings are now scheduled for September 4, 2014 as well. See Bankruptcy Docket 09-23155, doc. nos. 922, 930, 931.

Rock Airport has requested that this Court stay the bankruptcy proceedings under B.R. 8005 in order to preserve its "rights to obtain appellate review" of the two Memorandum Orders entered by the Bankruptcy Court in favor of MSA that held that MSA had standing to file its Reorganization Plan and denied Rock Airport's Objection to the claim obtained by MSA from the Priscilla Trust. Doc. no. 1, ¶ 9-11. MSA argues that Rock Airport's requested stay is unwarranted and unallowable. Doc. no. 2, ¶¶ 9-11. However, the Parties do agree that there is four-part test that the Court should utilize when deciding this issue.

### III. Legal Analysis

**A. The Statute and Case Law (four-part test) at Issue**

Bankruptcy Rule of Procedure 8005 states in relevant part:

**Rule 8005  Stay Pending Appeal**

A motion for a stay . . . of the order . . . of a bankruptcy judge . . . for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. . . . **A motion for such relief**, or for modification or termination of relief granted by a bankruptcy judge, **may be made to the district court** or the bankruptcy appellate panel, **but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.** . . .

B.R. 8005 (2014) (emphasis added).

Assuming that the movant can adequately show why a motion for relief was not first made to the Bankruptcy Court, the movant must establish four elements in order to obtain a stay of a Bankruptcy Judge's Order under Rule 8005. To obtain a stay, the movant must establish the four elements: (1) a strong likelihood of success on the merits of the appeal; (2) the movant will suffer substantial irreparable injury if the stay is denied; (3) substantial harm will not be suffered by the other parties if the stay is granted; and (4) issuance of the stay would not harm the public

4

interest. *In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Foundation*, 252 B.R. 309, 321 (W.D. Pa. 1999); see also *In re Malat Irrevocable Trust,* 2009 WL 5206185, *1 (D.N.J. Dec. 21, 2009).

### B. Application of the Law to the Facts Presented

#### 1. Rock Airport Does not Meet the Requirements of Rule 8005

First, it is indisputable that Rock Airport did not first file a Motion seeking a Stay from the Bankruptcy Court before filing the present Motion with this Court. This Court's review of the bankruptcy docket in this matter does not reveal a Motion for Stay filed by Rock Airport predicated upon the grounds set forth in the Rock Airport's submission to this Court. Indeed, Rock Airport carefully states that it filed a "**similar** Motion with the Bankruptcy Court" but does not expressly state that it filed a Motion for Stay. See Doc. no. 1, ¶ 11 (emphasis added). This Court presumes the "similar Motion is Rock Airport's "emergency motions to continue/reschedule" the September 4, 2014 hearings "due to unavailability of witness."[4] See Bankruptcy Docket 09-23155, doc. no. 935.

Second, although Rock Airport clearly did not file a request for a stay of the proceedings with the Bankruptcy Court, Rule 8005 permits movants like Rock Airport to file such motions directly with a District Court (such as this Court), but the motion "**shall** show why the relief, modification, or termination was not obtained from the bankruptcy judge." Here, the only reason

---

[4] If the Bankruptcy Court were to grant this motion it would certainly delay the hearings – as would this Court's grant of a stay of proceedings – and Rock Airport would obtain additional time to possibly avoid the sale of its assets (albeit for a shorter duration with the Bankruptcy Court's grant of a continuance as opposed to this Court's grant of a stay). Stated simply, Rock Airport's continuance request – if granted by the Bankruptcy Court – and the stay request – if granted by this Court – would have same net effect for Rock Airport – a delay in the sale of its assets.

However, this "similar" net effect or outcome if both Courts were to grant each of its respective emergency motions filed by Rock Airport is not the same as making the same request of both Courts. Thus, this Court finds that Rock Airport failed to comply with the portion of Rule 8005, which requires it to "ordinarily" present its Motion for Stay "to the bankruptcy judge in the first instance."

5

Rock Airport provides for taking such action without first seeking relief from the Bankruptcy Court is as follows:

> . . . since the Bankruptcy Court has repeatedly determined the issues raised in the appeal in favor of MSA, and it is unlikely that the Bankruptcy Court will reconsider its prior rulings and the arguments advanced by the Debtor herein . . . .

Doc. no. 1, ¶ 11. The Court finds this reason utterly insufficient. In fact, the Court reads this reason as a form of forum shopping. Because Rock Airport is dissatisfied with the decisions the Bankruptcy Court has reached, it has decided to invoke Rule 8005 and claim that this is a legitimate basis upon which it can file an Emergency Motion in this Court seeking a stay. Again, the Court does not recognize this as a solid basis upon which Rule 8005 may be invoked.

However, there is little to no case law emanating from the United States Court of Appeals for the Third Circuit (or any other Circuit) to guide this Court on this point. Therefore, this Court has also considered if Rock Airport had advocated a sufficient reason to file this Motion directly with this Court and bypass the Bankruptcy Court, whether the relief requested (a stay in the Bankruptcy Court delaying the sale of its assets) could be granted.

### 2. The four-part test

Next, the Parties agree that Rock Airport must establish four elements in order to obtain a Stay from this Court of the Bankruptcy Judge's Order under Rule 8005. To obtain a stay, the movant must establish the following four elements: (1) a strong likelihood of success on the merits of the appeal; (2) the movant will suffer substantial irreparable injury if the stay is denied; (3) substantial harm will not be suffered by the other parties if the stay is granted; and (4) issuance of the stay would not harm the public interest. *In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Foundation ("AHERF")*, 252 B.R. 309, 321 (W.D. Pa. 1999).

The Court also notes that with respect to the test, the District Court in *AHERF* also determined the following:

> While some courts have found that the movant's failure to persuade the court regarding any one of these factors is sufficient to deny the stay, *e.g. In re Blackwell*, 162 B.R. at 118, "the more common approach ... is to balance all factors in making this determination. *E.g., In re Dakota Rail, Inc.*, 111 B.R. 818 (Bankr. D. Minn.1990); *In re Richardson*, 15 B.R. 930, 931 (Bankr. E.D. Pa.1981)." *In re Edwards*, 228 B.R. 573, 574–76 (Bankr. E.D. Pa.1999). Stated otherwise, a court "should realize that these four factors structure the inquiry. However, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a 'delicate balancing of all elements.' " *In re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr. M.D. Pa.1988) (citations omitted).

252 B.R. at 321. This Court concurs that a balancing test is both a more common and fair approach and utilized this approach when it denied Rock Airport's request via a text Order on August 22, 2014. As the Court noted in its text Order, Rock Airport cannot not meet any one of the four parts.

The first part of the four-part test requires Rock Airport to demonstrate to this Court that it is likely to succeed on the merits of its claim. To this end, Rock Airport merely states that it "meets the above criteria in this case and is entitled to a stay of the sale pending disposition of the appeal." Doc. no. 1, ¶ 13. Aside from this broad statement – which does nothing to offer any proof of likelihood of success on the merits (nor rise to the level of proof to meet any of the three requirements under the four-part test) – Rock Airport also "incorporates by reference" arguments it previously set forth "in its Expedited Motion for Limited Reconsideration of Order Approving Amended Disclosure Statement of [MSA]."[5] Id. at ¶ 14.

In this Motion, Rock Airport notes that MSA sought and obtained approval of its amended disclosure statement following " . . . vigorous disputation and argument at the hearing

---

[5] The Motion to which this Court presumes Rock Airport is referring and "incorporating by reference" was filed at doc. no. 787 in the Bankruptcy Case (Bankruptcy no. 09-23155).

held by this Honorable Court regarding MSA's Amended Disclosure Statement . . . ."  Rock Airport's Motion seeking a Limited Reconsideration of Order Approving Amended Disclosure Statement of MSA requested that the Bankruptcy Court provide a "limited reconsideration of its Order dated July 21, 2014 approving MSA's Amended Disclosure Statement at Document No. 784 and by clarifying its ruling regarding MSA's standing to prosecute a Plan of Reorganization if the Court has found such standing exists."  Rock Airport's Motion was granted in part and denied in part by the Bankruptcy Court, which set forth its reasons for its prior ruling in a Memorandum Order clarifying its prior decision.  In its conclusion, the Bankruptcy Court stated:

> . . . this Court finds MSA to be a party in interest under §1121(c) as MSA is a creditor and as it has otherwise shown a sufficient stake in this case.  MSA has demonstrated significant interests that could be affected by this proceeding and Debtor's Plan.  Furthermore, it is this Court's belief that proceeding with two competing plans of reorganization is in the best interest of the creditors in this case.
>
> \* \* \*
>
> 1. The motion is DENIED to the extent it seeks reconsideration of the July 21st Order.
>
> 2. The motion is GRANTED to the extent it seeks clarification of the July 21st Order.
>
> 3. The July 21st Order is clarified to provide that MSA is a party in interest under 11 U.S.C. §1121(c) and has standing to file a plan of reorganization in this case.

Bankruptcy Docket 09-23155, doc. no. 832, pp 6-7.

Given that Rock Airport has twice made the same substantive argument to the Bankruptcy Court concerning MSA's standing and twice has been denied and provided with clarification after filing a reconsideration request, this Court concludes that Rock Airport is not likely to succeed on the merits for the same reasons set forth by the Bankruptcy Court.

Furthermore, Rock Airport chose not to provide this Court with any additional or new substantive facts or arguments upon which this Court could base a conclusion that Rock Airport

is likely to succeed on the merits. Instead, Rock Airport chose to "incorporate by reference" facts and arguments it previously made to the Bankruptcy Court (at least twice, but in reality several time under the guise of several differently styled Motions all of which sought to eliminate MSA as a creditor and/or a stakeholder with standing to file a Plan), but without any great specificity as to which facts/arguments to which it was referring (thereby inviting this Court to engage in a "go fish" endeavor).[6] This Court, having reviewed the loosely referenced document set forth in Rock Airport's Motion at paragraph 14 (which this Court believes is doc. no. 787) as well as additional documents related to that document, the Court concludes Rock Airport has failed to meet its burden that it is likely to succeed on the merits.

Turing to the second prong of the test, the movant will suffer substantial irreparable injury if the stay is denied, Rock Airport argues that it will "incur irreparable harm if the stay of the proceedings and sale of substantially all of the Debtor's assets is denied." Rock Airport claims that if this Court denies the request for a stay it will "be divested of all of its assets and any ability to promote its Plan of Reorganization." Further, Rock Airport contends that "[i]f the sale is permitted to proceed prior to appellate review of the Orders appealed from by [Rock Airport], [Rock Airport]'s appeal will be rendered moot, and [it] will simply become a defunct corporate shell with no means to pay its creditors or effectively reorganize." Doc. no. 1, ¶ 19.

As noted by MSA, the "promotion" of a Plan of Reorganization is simply a debtor's way of suggesting a plan by which it can and will repay its reorganized debt. Denying the stay will

---

[6] The Court acknowledges paragraphs 15- 18 of Rock Airport's instant Motion, which are directly taken from doc. no. 787 from the Bankruptcy Docket, in which Rock Airport argues that MSA lacks sufficient standing. Again, these statements and arguments offer this Court nothing new. Rock Airport in these paragraphs further claims that the Bankruptcy Court took no evidence on the standing issue, and instead, "accepted without proof, the statement of counsel to support MSA's claims related to standing." Despite this allegation, at this stage of the proceedings, MSA has been deemed to be a party in interest because *(inter alia)* it owns real estate located in RockPointe. This is real evidence and not merely a statement of counsel.

9

not strip Rock Airport of this ability to "promote." The very goal of the sale of assets is to acquire proceeds to pay creditors. While the Court understands that Rock Airport will no doubt consider the sale of its assets a loss, (and when taken to the extreme rendering it "a defunct corporate shell" this does not render it unable to pay the creditors. In fact, the opposite is true – the creditors will be paid. Thus, this Court concludes that Rock Airport has not met its burden of proving irreparable harm.

Similarly, this Court concludes that Rock Airport has failed to meet the third and fourth parts of the four-part test. Rock Airport has failed to demonstrate how others would be "substantially harmed" and how the public interest would be harmed if this Court refuses (as it has) to deny the stay. MSA points out that Huntington Bank has already filed a foreclosure complaint which could result in a default judgment and foreclosure within 35 days after filing the complaint. If that occurs, then the bank could proceed with a writ of execution on the judgment in mortgage foreclosure, and then to sheriff's sale of the real estate. This clearly would harm MSA and/or its affiliate Alaskan Property or the successful bidder, as noted above. Moreover, the public has an interest in the re-opening of this airport. If a stay were granted the airport's ability to reopen would (again) be delayed indefinitely.

**IV. Conclusion**

Because this Court found that Rock Airport failed to meet the prerequisite requirements under Bankruptcy Rule 8005 allowing it to raise this matter before this Court, the Court denied Rock Airport's Emergency Motion for Stay of Proceedings Pending Appeal Pursuant to Bankruptcy Rule 8005 (doc. no. 1) by way of text Order dated August 22, 2014. The Court also denied Rock Airport's Emergency Motion, because Rock Airport failed to meet any part of the

four-part test and thereby failed on the merits. Accordingly, this Court could not grant Rock Airport's request for a stay pending appeal from the Bankruptcy Court's Order allowing the sale of its property. Therefore, the Emergency Motion (doc. no. 1) was DENIED. As noted above, an appropriate text Order was entered by this Court on August 22, 2014.

 s/   Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge